IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLOS VARGAS, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv766-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 28 U.S.C. § 2255 motion has been submitted on the pleadings, written submissions, and an evidentiary hearing.  After due consideration, including scrutiny of the record in this case, the court concludes that no relief is warranted.

## I.   INTRODUCTION

On April 14, 2008, the petitioner, Carlos Vargas, Jr. ("Vargas"), appeared before this court and, pursuant to a plea agreement, pled guilty to walk-away escape, in violation of 18 U.S.C. § 751(a).[1]  Sentencing was held on August 7, 2008. Vargas was sentenced as a career offender under U.S.S.G. § 4B1.1 based on his two prior felony convictions for controlled

---

[1]Title 18 U.S.C. § 751(a) provides, in pertinent part:

Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both[.]

substance offenses and the district court's finding that the instant offense of conviction, walk-away escape in violation of 18 U.S.C. § 751(a), qualified as a "crime of violence."[2] *See* U.S.S.G. § 4B1.1.  Under the career offender guideline, Vargas's advisory guideline sentencing range was 37 to 46 months.[3]  The district court sentenced Vargas to 46 months in prison.  A direct appeal was not taken.[4]

On August 5, 2009, Vargas, proceeding *pro se* at the time, filed the instant § 2255 motion, asserting the following claims:

1.    His counsel rendered ineffective assistance by failing to file an appeal challenging his classification as a career offender.

---

[2]In order to be a career offender under U.S.S.G. § 4B1.1, a defendant must have been at least eighteen years old at the time the defendant committed the instant offense of conviction, the instant offense of conviction must be either a crime of violence or a controlled substance offense, and the defendant must have had at least two prior felony convictions of either a crime of violence or a controlled substance offense.  *See* U.S.S.G. § 4B1.1(a).

Under the sentencing guidelines, a "crime of violence" is defined as a felony under federal or state law that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a).

[3]U.S.S.G. § 4B1.1(b) directs that, except as provided in subsection (c), if the offense level of the career offender from the table in the subsection is greater than the otherwise applicable offense level, the offense level from the table in the subsection shall apply. The statutory penalty for a violation of 18 U.S.C. § 751(a) is not more than five years. Therefore, pursuant to U.S.S.G. § 4B1.1(b)(F), the base offense level for Vargas's instant offense was 17. Vargas received a two-level reduction, for acceptance of responsibility, under U.S.S.G. § 3E.1(a) and a one-level reduction, for timely notifying the government of his intent to plead guilty, under U.S.S.G. § 3E.1(b).  His total offense level was therefore 14.  Pursuant to U.S.S.G. § 4B1.1(b), a career offender's criminal history category in every case is VI.

[4]The plea agreement contained an appeal/post-conviction waiver, with exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct.

> 2. His counsel rendered ineffective assistance by failing to argue at sentencing that he should not be deemed a career offender because walk-away escape is not a "crime of violence."

*See Doc. Nos. 1,2, and 11.*[5]  Vargas also presents a claim that the district court's career offender determination, based on its finding that his walk-away escape was a "crime of violence," amounted to an error of law constituting a fundamental defect that resulted in a miscarriage of justice. *See Doc. No. 29, generally.*

This court set an evidentiary hearing, with specific concern for Vargas's claim regarding his counsel's failure to file an appeal, and appointed counsel to represent Vargas at the evidentiary hearing. The hearing was held on April 25, 2012.

## II.  DISCUSSION

### A.  General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved

---

[5]Unless otherwise indicated, references to document numbers are to those assigned by the Clerk to pleadings docketed in the instant action.  Page references in the pleadings for this action are to those assigned by CM/ECF.

for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent[.]"

## B.   Ineffective Assistance of Counsel

### 1.   *Standard of Review for Claims of Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

"Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 2.    *Counsel's Failure to File Direct Appeal*

Vargas contends that his trial counsel, Rick Jancha, rendered ineffective assistance of counsel by failing to file a direct appeal challenging his classification as a career offender. *Doc. No. 1 at 4; Doc. No. 11 at 2-5.*

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United State Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477. With respect to the first prong of *Strickland* – whether counsel's representation fell below an objective standard of reasonableness – the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). In such cases, prejudice is presumed, and the

petitioner is entitled to a new appeal without any further showing.[6] *Flores-Ortega*, 528 at 483 ("The ... denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, ... demands a presumption of prejudice.").

Even if a client has not made a specific request of his counsel to file an appeal, counsel generally has a duty to "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

### a. Vargas's testimony at the evidentiary hearing

At the evidentiary hearing, Vargas acknowledged that he never expressly asked Jancha to file an appeal on his behalf. *Doc. No. 44 at 61.* He further admitted that, when he pled guilty, he understood he was waiving his right to appeal under the plea agreement. *Id. at 53-54.* However, Vargas claimed that, at the relevant times, he did not actually understand the purpose of an appeal. *Id. at 55-56 and 61-62.* According to Vargas, although both Jancha and the Magistrate Judge (at the change of plea hearing) advised him, and he acknowledged, that he was waiving his right to appeal under the plea agreement, he did not appreciate the significance of the waiver because he did not understand what an appeal was. *Id. at 55-59.* Vargas maintained that when he entered his plea, "all that [he] really paid

---

[6]These rules apply with equal force when a petitioner waives some but not all of his appellate rights through a plea agreement. *Gomez-Diaz*, 433 F.3d at 793–94.

attention to" was how much time in prison the plea agreement called for and that he "never paid attention to an appeal ... and all that." *Id*. He testified that shortly after the sentencing hearing, Jancha visited him at the city jail and told him that he had a right to appeal, but that "[w]e didn't go into detail about anything," including discussing what an appeal entailed. *Id. at 50 and 56*.

Vargas further testified that during his early conversations with Jancha, before the plea agreement was negotiated, Jancha talked to him about the appellate court decisions holding that walk-away escape was a "crime of violence" for purposes of the career offender guideline. *Id. at 48-49 and 62*. Jancha told him that under the controlling case law, he was subject to treatment as a career offender pursuant to the sentencing guidelines.[7] *Id. at 49*. During these conversations, Vargas asked Jancha how "they [were] going to career [him] out on a walk-away" when his offense didn't involve actual violence. *Id. at 62*. Vargas stated that Jancha explained that, although he agreed that walk-away escape should not be treated as a crime of violence, the Eleventh Circuit nevertheless considered it to be a crime of violence.[8] *Id. at 54-55*.

---

[7]Vargas testified that Jancha also explained to him that the Supreme Court had not issued an opinion on the issue at that time. *Id. at 49*.

[8]As indicated below in this Recommendation, when Vargas pled guilty, and when he was sentenced, controlling case law in the Eleventh Circuit provided that walk-away escape qualified as a "crime of violence" under the career offender guideline, U.S.S.G. § 4B1.1. *See United States v. Gay*, 251 F.3d 950, 954-55 (11th Cir. 2001). As recently as the year previous to Vargas's guilty plea, the Eleventh Circuit reaffirmed its holding in *Gay* and further held that escape constituted a "violent felony" for purposes of determining armed career criminal status under the Armed Career Criminal

(continued...)

Vargas said that he could not fully comprehend a complicated court opinion when reading it on his own and that he relied on Jancha's explanations in order to understand the significance of the court decisions about walk-away escape. *Id at 47*. He stated that he attended school only through the sixth grade, but had been "socially promoted" to the ninth grade. *Id. at 46*.

Vargas acknowledged that Jancha explained the career offender guideline to him before he entered his guilty plea and that Jancha advised him of the effect that his treatment as a career offender would have on his sentence. *Id. at 62*. He also acknowledged that when he entered his guilty plea, he understood he was going to be treated as a career offender and that his sentence was going to be between thirty-seven to forty-six months in prison. *Id. at 57*.

b.   Jancha's testimony at the evidentiary hearing

Like Vargas, Jancha testified that Vargas never asked him to file an appeal. *Doc. No. 44 at 40*. He said that Vargas was "very bright, very intelligent, very inquisitive," and that Vargas was "a great client" who understood and capably discussed the pertinent legal issues in his case. *Id. at 8*. Jancha testified that, prior to Vargas's entry of a guilty plea, when he talked with Vargas about the views of different courts on walk-away escape as a "crime of

---

[8](...continued)
Act ("ACCA"), 18 U.S.C. § 924(e). *See United States v. Taylor*, 489 F.3d 1112, 1113-14 (11th Cir. 2007).   However, a little over five months after Vargas was sentenced, the United States Supreme Court, in *Chambers v. United States*, 555 U.S. 122 (2009) (decided Jan. 13, 2009), held that an escape in the nature of a "failure to report" for penal confinement is not a "violent felony" under the ACCA. *Chambers*, 555 U.S. at 123.

violence," he explained the appellate process, telling Vargas how, if someone believed an error had been committed in the lower court, he could appeal to an appellate court "to decide what the law actually is." *Id. at 63*. He said he explained to Vargas that there were multiple appellate courts in the United States and that the lower courts in a certain geographical area are generally bound by the decisions of the appellate court in that area. *Id. at 63-64*. According to Jancha, Vargas appeared to understand his explanation of the appellate process and "never indicated that he didn't understand what an appeal was." *Id. at 65*.

Jancha testified that, before Vargas entered his guilty plea, he fully discussed the relevant case law with Vargas on the issue of whether walk-away escape was a "crime of violence." *Id. at 7-8*. He said that he explained to Vargas that although there was a difference of opinion among some courts, the controlling law in the Eleventh Circuit considered walk-away escape to be a crime of violence, and therefore he would be treated as a career offender under the sentencing guidelines. *Id. at 7-8 and 13*. Jancha testified that he also advised Vargas that if he entered into the plea agreement and pled guilty, the issue of whether or not he was a career offender would be waived pursuant to the appeal-waiver in the plea agreement. *Id. at 66-67*. Jancha stated that prior to Vargas's guilty plea, he told Vargas he could file an appeal, but that other than the limited exceptions for claims of ineffective assistance of counsel and prosecutorial misconduct, he would be waiving his appeal rights pursuant to the terms of the plea agreement. *Id. at 36-37*.

Jancha stated that, at sentencing, Vargas's treatment as a career offender was actually

10

"one of the least issues on our mind" and that his chief concern at sentencing was persuading the district court not to impose a variance above the applicable advisory guideline. *Id. at 15-16*. Jancha maintained that the U.S. Marshals Service was angry about the resources it had expended to recapture Vargas following his escape and was therefore pushing the prosecutor to argue for an upward variance and to have Vargas sentenced to five years in prison (the statutory maximum). *Id. at 15-20*. Jancha stated that, to this end, the Marshals provided inaccurate and inflammatory reports about Vargas to the U.S. Probation Office that then found their way into Vargas's presentence investigation report ("PSR"). *Id. at 18-20 and 25*. Jancha further explained:

> And during the sentencing, or right before sentencing, we went back into the judge's jury room and talked about the length of the hearing because we had a lot of witnesses set because it was going to be a very contentious sentencing hearing between the U. S. Marshals and Mr. Vargas and his family. But when the judge indicated that he would not do an upward variance, I spoke to Mr. Vargas and we decided that it would be best to withdraw our objections to the PSR, all of which at that time were related to what we thought was superfluous language [in the PSR], and go on to sentencing because the judge was going to sentence him within the guideline range.

*Id. at 16*. Jancha testified that the only way to get the prosecutor to agree to even a non-binding recommendation for a sentence at the low end of the guideline range was to include the appeal waiver in the plea agreement. *Id. at 12 and 27*.

Jancha did not recall if he visited Vargas at the jail after the sentencing hearing. *Id. at 14*. He stated that he did not talk to Vargas about the advantages and disadvantages of appealing following the sentencing hearing because he had discussed those matters with

Vargas before the change of plea hearing and Vargas understood that he had waived his appeal rights under the plea agreement.  *Id. at 14-15.*

### c.   Findings of fact and conclusions of law

For the most part, the testimony of Vargas and Jancha did not conflict. Both witnesses testified that Vargas never asked Jancha to file an appeal on his behalf, and both testified that Jancha did not consult with Vargas about the advantages and disadvantages of appealing following the sentencing hearing. Neither witness offered testimony indicating that, once the sentencing hearing concluded, Vargas demonstrated to Jancha that he was interested in appealing. The testimony of Vargas and Jancha differed most significantly on the question of whether Vargas understood what an appeal was. Vargas maintained that he could not appreciate the significance of his waiver of appeal rights because he did not even understand the purpose of an appeal.  Jancha, on the other hand, testified that Vargas was an intelligent client who demonstrated comprehension of the pertinent legal issues in his case, who assisted in his defense, and who never indicated he did not understand what an appeal was. Jancha also testified that he discussed the appellate process at some length when talking to Vargas about how the federal courts had ruled on the question of whether walk-away escape was a crime of violence.

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned credits Jancha's testimony that he explained the appellate process to Vargas sufficiently for Vargas to understand what an

appeal was. Conversely, the court is unpersuaded by and, indeed, finds disingenuous, Vargas's testimony that he did not understand what an appeal was.[9]

As indicated above, both Vargas and Jancha testified that Vargas never asked Jancha to file an appeal on his behalf. Even so, Jancha had a duty to consult with Vargas about an appeal if Jancha reasonably demonstrated an interest in appealing or if a rational defendant in Jancha's position would have sought an appeal. *Flores-Ortega*, 528 U.S. at 480. Adequate consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478; *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). Jancha arguably fulfilled the requirements of adequate consultation by fully explaining to Vargas the effects of the waiver provision in the plea agreement on his appeal rights prior to entry of his guilty plea, and by telling Vargas at that time that, although he could file an appeal, he would, with limited exceptions, be waiving his appeal rights pursuant to the terms of the plea agreement.

However, even assuming that Jancha's pre-plea discussions with Vargas were inadequate to fulfill his duty to consult about the advantages and disadvantages of an appeal,

---

[9]In making its credibility determination, the court recognizes, of course, that it is improper to determine credibility based on the "status" of a witness. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Thus, neither Vargas's status as a convicted felon nor Jancha's status as a lawyer is determinative. Rather, the court has weighed the testimony of these witnesses in light of all the facts, taking into account their interests in the outcome of the proceedings, the consistencies or inconsistencies in their testimony, and their demeanor on the stand. *Ramirez-Chilel*, 289 F.3d at 749.

the court finds that Jancha had no duty to consult further with Vargas about appealing following sentencing, because the evidence indicates that Vargas did not reasonably demonstrate an interest in appealing and that a rational defendant in Vargas's position would not want to appeal. *Flores–Ortega*, 528 U.S. at 480. Vargas did not provide evidence suggesting that, at or following the sentencing hearing, he ever indicated to Jancha that he was interested in appealing. The only post-sentencing contact or communication with Jancha that Vargas testified to was a visit from Jancha at the jail, during which, according to Vargas, Jancha told him that he had a right to appeal. *Id. at 50 and 56*. However, Vargas did not testify that he then told Jancha he wanted to appeal or that he made statements to Jancha expressing any interest in appealing.[10] For these reasons, the court finds that Vargas did not reasonably demonstrate an interest in appealing.

For purposes of determining whether a rational defendant would have wanted to appeal, the Supreme Court in *Flores-Ortega* stated:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

---

[10] Vargas's testimony that he questioned Jancha about why his escape would be considered a crime of violence when his offense did not involve actual violence indicated that this discussion took place during the plea-negotiation process, before Vargas entered his guilty plea pursuant to the plea agreement containing an appeal waiver.

*Flores-Ortega*, 528 U.S. at 486.  Here, Vargas was convicted pursuant to a guilty plea under a plea agreement by which he expressly waived his right to challenge his sentence and reserved exceptions only for claims of ineffective assistance of counsel and prosecutorial misconduct.[11]  Vargas has not suggested that, following the sentencing hearing, he had a viable claim that Jancha's performance was deficient or that the prosecution had engaged in misconduct.  Although Jancha was sentenced at the high end of the applicable advisory guideline range, the government abided by its obligation under the plea agreement to recommend a sentence at the low end of the guideline range, and it was clear from the terms of the plea agreement that the government's recommendation was non-binding. The single issue that Vargas now maintains Jancha should have appealed was whether or not walk-away escape was a crime of violence for purposes of the career offender guideline, U.S.S.G. § 4B1.1.  However, when Vargas was sentenced, the controlling law in the Eleventh Circuit (and in all but one circuit to have addressed the issue) provided that walk-away escape qualified as a crime of violence under the career offender guideline and as a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[12]  *See United States*

---

[11]It is well settled that appeal waivers are valid if made knowingly and voluntarily.  *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005) (internal citation omitted).  The plain language of the agreement informed Vargas that he was waiving an appeal and collateral attack on his sentence.  The record demonstrates that the court specifically questioned Vargas during the change of plea hearing about the waiver provision in the plea agreement and that Vargas indicated he understood its significance.  *Doc. No. 5-3 at 8*.

[12]*See, e.g., United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004); *United States v. Jackson*, 301 F.3d 59, 62-63 (2nd Cir. 2002); *United States v. Thomas*, 361 F.3d 653, 660 (D.C. Cir. 2004); *United* (continued...)

*v. Gay*, 251 F.3d 950, 954-55 (11th Cir. 2001); *see also United States v. Taylor*, 489 F.3d 1112, 1113-14 (11th Cir. 2007).  Thus, filing an appeal on this basis would have appeared fruitless to any rational defendant in Vargas's position.  Under these circumstances – in light of  both the appeal waiver foreclosing review of most issues and the then-controlling law holding walk-away escape to be a crime a violence – the court finds that a rational defendant in Vargas's position would not have wanted to appeal.  *Flores-Ortega*, 528 U.S. at 480.

In sum, the court concludes that (1) Vargas did not ask Jancha to file an appeal; (2) Vargas did not reasonably demonstrate an interest in appealing; and (3) a rational defendant in Vargas's position would not have wanted to appeal. Therefore, Jancha did not render ineffective assistance of counsel by failing to file a direct appeal on Vargas's behalf.  Vargas is not entitled to relief on this claim.

### 3.   *Failure to Challenge Career Offender Classification at Sentencing*

Vargas contends that Jancha rendered ineffective assistance of counsel by failing to argue at sentencing that Vargas should not be classified as a career offender because walk-away escape is not a "crime of violence."  *See Doc. No. 1 at 4; Doc. No 2, generally*.

When Vargas was sentenced, the controlling law in the Eleventh Circuit was that

---

[12](...continued)
*States v. Luster*, 305 F.3d 199, 202 (3rd Cir. 2002); *United States v. Hairston*, 71 F.3d 115, 117-18 (4th Cir. 1995); *United States v. Ruiz*, 180 F.3d 675, 676-77 (5th Cir. 1999); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999); *United States v. Franklin*, 302 F.3d 722, 724 (7th Cir. 2002); *United States v. Nation*, 243 F.3d 467, 472 (8th Cir. 2001); *United States v. Springfield*, 196 F.3d 1180, 1185 (10th Cir. 1999); *but see United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006).

walk-away escape qualified as a "crime of violence" under the career offender guideline. *See United States v. Gay*, 251 F.3d 950, 954-55 (11th Cir. 2001). Moreover, as recently as the year before Vargas was sentenced, the Eleventh Circuit reaffirmed its holding in *Gay* and additionally held that escape constituted a "violent felony" for purposes of determining armed career criminal status under the ACCA. *See United States v. Taylor*, 489 F.3d 1112, 1113-14 (11th Cir. 2007). The Eleventh Circuit has repeatedly read the definition of a "violent felony" under the ACCA as "virtually identical" to the definition of a "crime of violence" for purposes of the career offender guideline. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

On January 13, 2009, a little over five months after Vargas was sentenced, the United States Supreme Court held in *Chambers v. United States*, 555 U.S. 122 (2009) that an escape in the nature of a "failure to report" for penal confinement is not a "violent felony" under the ACCA. *Chambers*, 555 U.S. at 123. The Eleventh Circuit later applied the Court's reasoning in *Chambers* to hold that a walk-away escape from a penal institution is not a crime of violence. *United State v. Lee*, 586 F.3d 859, 873 (11th Cir. 2009) (finding that a non-violent walk-away escape is not properly classified as a violent felony under the ACCA because it is not "roughly similar, in kind as well as in degree of risk posed, to arson, burglary, extortion, or crimes involving the use of explosives). Vargas and the government agree that, after the Supreme Court's *Chambers* decision and the Eleventh Circuit's decision in *Lee*, walk-away escape no longer qualifies as a violent felony for purposes of the ACCA

17

or as a "crime of violence" for purposes of the career offender guideline. However, Vargas's trial counsel could not render constitutionally ineffective assistance by failing to argue against walk-away escape as crime of violence at Vargas's sentencing (an argument which was contrary to the law at the time) or by failing to foresee the Supreme Court's decision in *Chambers*, which was not issued until more than five months after Vargas was sentenced. The Eleventh Circuit has held that reasonably effective representation does not include a requirement to make arguments based on predictions of how the law might develop. *See Spaziano v. Singletary*, 36 F.3d 1028,1039 (11th Cir. 1994). "In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001). Moreover, even if a claim based upon an anticipated change in the law is reasonably available at the time counsel failed to raise it, such failure does not constitute ineffective assistance. *See Pitts v. Cook*, 923 F.2d 1568, 1573-74 (11th Cir. 1991).

Consequently, Vargas is not entitled to relief based on this claim of ineffective assistance of counsel.

### C.   Fundamental Legality of Vargas's Sentence

Vargas also argues that *Chambers* applies retroactively to cases on collateral review and that the district court's career offender determination, based on its finding that Vargas's walk-away escape qualified as a "crime of violence" under the career offender guideline (which is unquestionably no longer the case), represents a defect in the proceedings that calls

18

into question the fundamental legality of his sentence. *Doc. No. 29 at 5-6*. However, *Chambers* includes no statement from the Supreme Court that the decision applies retroactively to a case on collateral review, and no binding Eleventh Circuit decision requires retroactive application of *Chambers* to Vargas's § 2255 motion. Moreover, the Eleventh Circuit has stated that a "claim that a sentencing guidelines provision was misapplied ... is not a constitutional claim. If it were, every guidelines error would be a constitutional error." *Gilbert v. United States*, 640 F.3d 1293, 1321 (11th Cir. 2011) (en banc).

The Eleventh Circuit has also held that errors in application of the sentencing guidelines are subject to the ordinary rules of procedural default as long as the sentence imposed does not exceed the statutory maximum sentence that would have been applied absent the error.[13]  *Gilbert*, 640 F.3d at 1306.  In *McKay v. United States*, 657 F.3d 1190 (11th Cir. 2011), *Bido v. United States*, 438 Fed.Appx. 746 (11th Cir. Jul. 20, 2011), and *Orso v. United States*, 452 Fed.Appx. 912 (11th Cir. Jan. 17, 2012), where the § 2255 petitioners were sentenced as career offenders and subsequent changes in the law (pursuant to decisions

---

[13]As a general rule, a criminal defendant who fails to raise an issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion absent a showing of cause for failing to raise the claim and actual prejudice from the alleged error. *See United States v. Frady*, 456 U.S. 1152 (1982).  The merits of a procedurally defaulted claim may be reached, in very narrowly defined circumstances, if failure to address the claim would result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 495 (1986). And, actual innocence of the offense may be shown to satisfy the fundamental miscarriage of justice standard. *See Schlup v. Delo*, 513 U.S. 298, 320-21 (1995) ("tying the miscarriage of justice exception to innocence ... accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.'").

by the United States Supreme Court) resulted in prior convictions found at the petitioners' sentencing to qualify as "crimes of violence" under the career offender guideline no longer qualifying as such, the Eleventh Circuit held that the petitioners' claims that their sentences were unlawful and that they should be resentenced as non-career offenders were procedurally defaulted because the claims were not raised on direct appeal. *See McKay*, 657 F.3d at 1200; *Bido*, 438 Fed.Appx. at 748; *Orso*, 452 Fed.Appx. at 914-15. The Court further held that errors in application of the sentencing guidelines resulting in career offender designation do not constitute a "fundamental miscarriage of justice" or satisfy the "actual innocence" exception to the procedural-default doctrine. *Id.*; s*ee also Gilbert*, 640 F.3d at 1320 ("actual innocence" does not apply to a career offender designation because that designation is not a separate substantive offense; "[a] defendant who is convicted and then has the § 4B1.1 career offender enhancement ... applied in the calculation of his sentence has not been convicted of being guilty of the enhancement.").

Here, Vargas's classification as a career offender increased his guideline range to 37 to 46 months in prison. He was sentenced to 46 months in prison. The statutory maximum sentence for his offense was five years (60 months) in prison. *See* 18 U.S.C. § 751(a). Accordingly, Vargas' classification as a career offender, although increasing his guidelines range, did not increase his sentence above the otherwise applicable statutory maximum. Vargas did not pursue a direct appeal; therefore, he did not present a claim that he was erroneously sentenced as a career offender on appeal.  Vargas does not meet the "cause and

prejudice" threshold in his pleadings. While ineffective assistance of counsel may constitute "cause" excusing a procedural default, *see Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989), Vargas, as noted above, has not established that his counsel rendered ineffective assistance. Because the Eleventh Circuit has made clear that errors in application of the sentencing guidelines – and specifically in application of the career offender guideline – do not constitute "fundamental miscarriage[s] of justice" or satisfy the "actual innocence" exception to the ordinary rules of procedural default, *see McKay*, 657 F.3d at 1200; *Bido*, 438 Fed.Appx. at 748; *Orso*, 452 Fed.Appx. at 914-15, Vargas's claim that he was erroneously sentenced as a career offender is barred from review.

Vargas's claim of sentencing error is also barred by the appeal/post-conviction waiver provision in his plea agreement. An appeal waiver and/or a collateral-review waiver will be enforced if (1) the trial court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005). The plain language of the waiver provision in the plea agreement here informed Vargas that he was waiving both an appeal and a collateral attack challenging his sentence. During the guilty plea colloquy, the court specifically questioned Vargas about the waiver provision, and Vargas averred that he understood the consequences of the waiver.[14] *Doc. No. 5-3 at 8*. Consequently, the waiver provision bars Vargas's instant claim that he was

---

[14]As previously indicated, this court finds Vargas's testimony that he did not understand what an appeal was not to be credible.

improperly sentenced as a career offender.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the § 2255 motion filed by Vargas be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before July 13, 2012.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 29th day of July, 2012.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE